IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, on behalf of itself and all similarly situated organizations; and MARY DIXON, on behalf of herself and all similarly situated persons, | ) ) ) ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) | Judge _____ |
| v. | ) ) ) | |
| JESSE WHITE, Illinois Secretary of State, in his official capacity, | ) ) ) ) | |
| Defendant. | ) | |

## VERIFIED CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, make their Complaint against defendant as follows:

### I. INTRODUCTION

1. This is a civil rights class action challenging, on its face, and as applied to non-profit advocacy organizations and their employees who are registered lobbyists, the Illinois Lobbyist Registration Act, 25 ILCS 170, as amended in August 2009, Pub. Act 96-555 at § 65 ("the amended Act"), as violative of the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs seek class-wide declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 *et seq*.

2. The First Amendment rights of speech, association, and petition include the right to engage in advocacy on matters of public concern before executive and legislative officials of state government. The amended Act unlawfully burdens these rights. It imposes on (almost) every non-profit organization that employs a registered

lobbyist an annual registration fee of at least $2,000 ($1,000 for the organization plus $1,000 for each of its lobbyist-employees). Further:

      (a)      The amended Act expressly diverts a substantial portion of each registration fee ($200 out of $1,000) to the Illinois General Revenue Fund. This is, on its face, an unlawful tax on speech, beyond a fee that the law may permit to defray the government's actual and reasonable costs to administer the amended Act.

      (b)      On information and belief, the combined $2,000 annual fee for each non-profit organization that employs a registered lobbyist exceeds the amount that it actually and reasonably costs the State of Illinois to administer the amended Act. This is another unlawful tax on speech.

      (c)      The amended Act exempts from this excessive $2,000 annual fee certain advocacy by media and religious organizations and persons, including by certain for-profit media. This preferential treatment violates the Free Speech Clause and the Establishment Clause of the First Amendment, and also the Equal Protection Clause of the Fourteenth Amendment.

## II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. THE PARTIES

5.      Plaintiff the American Civil Liberties Union of Illinois ("ACLU") is a non-profit, non-partisan, statewide organization with more than 20,000 members and supporters dedicated to protecting the civil rights and civil liberties guaranteed by the

Constitutions and civil rights laws of the United States and the State of Illinois. The ACLU engages in substantial legislative advocacy. It is a Section 501(c)(4) organization under the Internal Revenue Code.

6. Plaintiff Mary Dixon ("Ms. Dixon") has served as the ACLU's full-time Legislative Director from 1992 to the present.

7. Defendant, Jesse White, is the Illinois Secretary of State ("the Secretary"). He bears the statutory responsibility of administering the amended Act, which includes collection of the challenged registration fee under the amended Act. In doing so, he acts under color of state law. He is sued solely in his official capacity for purposes of class-wide declaratory and injunctive relief.

### IV. CLASS ALLEGATIONS

8. Plaintiffs bring this action on their own behalf, and on behalf of two plaintiff classes, pursuant to Rules 23(a), (b)(2), and (g) of the Federal Rules of Civil Procedure. These two classes are:

(a) the "non-profit advocacy organization class," represented by plaintiff the ACLU, comprising all non-profit organizations that presently are registered lobbyists, and/or intend, after January 1, 2010, to engage in lobbying as defined by the amended Act, and will therefore be required to pay the registration fee pursuant to the amended Act – except that this class does not include organizations that enjoy the amended Act's media or religion exemptions; and

(b) the "the registered lobbyist employee class," represented by plaintiff Ms. Dixon, comprising every person who, after January 1, 2010, will be employed by a member of the non-profit advocacy organization class and who is a

registered lobbyist – except that this class does not include individuals that enjoy the amended Act's media or religion exemptions.

9. The non-profit advocacy organization class and the registered lobbyist employee class each satisfies all of the prerequisites stated in Rule 23(a):

(a) The classes are numerous. As of September 2009, according to the list now posted on the Secretary's website, there were 1,709 registered organization lobbyists, and 1,925 registered individual lobbyists. More than 100 of these registered organizations are non-profits, and more than 100 of these registered individuals are employees of these non-profits.

(b) There are questions of law and fact common to all members of both classes, including whether the challenged provisions of the amended Act violate the First and Fourteenth Amendments.

(c) The claims of the two named plaintiffs are typical of the claims of the two respective classes. The named plaintiffs have engaged in advocacy subject to the amended Act's fee, and they will continue to do so.

(d) The two named plaintiffs will fairly and adequately represent the interests of the respective classes. They have no interests antagonistic to the classes. They seek declaratory and injunctive relief on behalf of, and which will benefit, all members of the classes. They are represented by counsel who are competent and experienced in civil rights and class action litigation, and who should be appointed as class counsel pursuant to Rule 23(g).

10. The non-profit advocacy organization class and the registered lobbyist employee class each satisfies Rule 23(b)(2), because the Secretary would impose the fee

under the amended Act on grounds that apply generally to the classes, so that final declaratory and injunctive relief in favor of the classes as a whole is therefore appropriate.

## V. FACTS

**A.    The amended Act: an overview**

11.    In general terms, the Illinois Lobbyist Registration Act, 25 ILCS 170, requires "lobbyists" and "lobbying entities" to register with the Secretary, pay a registration fee, and file certain reports. The law was amended in August 2009, Pub. Act 96-555 at § 65, and those amendments will become effective on January 1, 2010.

12.    The definitions in the amended Act are broad:

(a)    The terms "lobby" and "lobbying" encompass any communication with the executive or legislative branch of state government "for the ultimate purpose of influencing" their respective actions. 25 ILCS 170/2(e).

(b)    The term "person" encompasses "any individual, firm, partnership, committee, association, corporation, or other organization or group of persons." *Id.* §2(a).

(c)    The term "lobbyist" encompasses "any natural person who undertakes to lobby State government as provided in subsection (e)," *id.* §2(j), and "lobbying entity" means "any entity that hires, retains, employs, or compensates a natural person to lobby State government as provided in subsection (e). *Id.* §2(k).

13.    Subject to certain exemptions, the Act requires lobbyists and lobbying entities to register with the Secretary. In particular, Section 3(a) reads in relevant part that "any natural person who, for compensation or otherwise, undertakes to lobby, or any

person or entity who employs another person for the purposes [*sic*] of lobbying, shall register with the Secretary of State as provided in this Act, unless that person or entity qualifies for one or more of the following exemptions." 25 ILCS 170/3(a).

14. Each lobbyist and lobbying entity must register before lobbying, and file a statement by January 31 and July 31 of every year containing several items of information about the registrant (including an annual picture of the registrant), plus a description of the "executive, legislative, or administrative action in reference to which such [lobbying] service is to be rendered," and a list of each executive and legislative branch agency the registrant expects to lobby during the registration period. 25 ILCS 170/5.

**B.**     **The amended Act: the fee provisions**

15. Both before and after the recent amendments, Section 5 of the statute requires registrants to pay an annual fee to the Secretary.

16. Both before and after the recent amendments, Sections 3(a) and 5 of the Act require that if a non-profit organization employs a registered lobbyist, then there must be two payments of the registration fee, one for the lobbyist and one for the lobbying entity.

17. Before the recent amendments, the Act required an annual payment of:

    (a)    $150 by entities qualified under Section 501(c)(3) of the Internal Revenue Code; and

    (b)    $350 by all other entities.

18. Before the recent amendments, the Act allocated the fee as follows:

    (a)    $50 was allocated to "the Lobbyist Registration Administration

Fund for administration and enforcement of this Act," which was "intended to be used to implement and maintain electronic filing of reports under this Act."

    (b)    "the next $100" was "deposited into the Lobbyist Registration Administration Fund for administration and enforcement of this Act."

    (c)    "Any balance" – meaning the additional $200 paid by non-501(c)(3) organizations – was "deposited into the General Revenue Fund." On information and belief, this $200 was not used to administer and enforce the Act.

19.    The amended Act would increase to $1,000 the annual registration fee for all persons and organizations. This comprises more than a six-fold fee increase for 501(c)(3) organizations, and nearly a three-fold fee increase for all other registrants, including non-profits that are not 501(c)(3) organizations (such as the ACLU).

20.    The Amended Act would allocate the $1,000 fee as follows:

[1] $50 shall be deposited into the Lobbyist Registration Administration Fund for administration and enforcement of this Act and is intended to be used to implement and maintain electronic filing of reports under this Act, [2] the next $100 shall be deposited into the Lobbyist Registration Administration Fund for administration and enforcement of this Act, and [3] any balance shall be deposited into the General Revenue Fund, [4] except that amounts resulting from the fee increase of this amendatory Act of the 96th General Assembly shall be deposited into the Lobbyist Registration Administration Fund to be used for the costs of reviewing and investigating violations of this Act.

21.    In other words, the amended Act allocates the $1,000 fee as follows:

    (a)    $200 to the General Revenue Fund, as before; and

    (b)    $800 to the Lobbyist Registration Administration Fund, comprised of the $150 allocation under the prior Act, plus the additional $650 under the amended Act.

22.    Upon information and belief, $2,000 far exceeds the amount it actually

and reasonably costs the Secretary to ensure that a non-profit advocacy organization and its registered lobbyist employee comply with the amended Act. Among other things:

  (a) In every other state, for a non-profit advocacy organization plus its registered lobbyist employee, the total lobby registration fee is less than $365. In 42 states, such fee is $150 or less. Further, the federal government does not charge a lobbyist registration fee.

  (b) The prior Act required only $700 to register a non-profit advocacy organization and its lobbyist employee.

**C.** **The amended Act: the exemptions for media and religion**

  23. Section 3(a) of the amended Act sets forth ten categories of persons and organizations that are exempt from the $1,000 registration fee, and also from the Act's substantial reporting and disclosure requirements. Two exemptions comprise unlawful speaker-based discrimination. In essence, they provide that certain media and religious organizations and individuals may advocate for legislative or executive action without paying a fee, while others organizations and individuals – including the ACLU and Ms. Dixon – must pay a fee to advocate on precisely the same issues.

  **1.** **The media exemption**

  24. Section 3(a)(2) of the amended Act would exempt: "Persons or entities who own, publish, or are employed by a newspaper or other regularly published periodical, or who own or are employed by a radio station, television station, or other bona fide news medium that in the ordinary course of business disseminates news, editorial or other comment, or paid advertisements that directly urge the passage or defeat of legislation."

8

25. Many if not most news organizations, in the ordinary course of business, disseminate news, editorials, and/or paid advertisements that urge the passage or defeat of legislation. Thus, all of these for-profit and non-profit news organizations – and all of their respective owners, publishers, and employees – are exempt from the $1,000 registration fee. This exemption applies to situations in which these news organizations and their employees engage in direct communications with legislators and executive officials "for the ultimate purpose of influencing any executive, legislative, or administrative action." 25 ILCS 170/2(e). Many members of the news media engage in such direct advocacy on a broad array of matters of public concern, including the reporters' privilege, the Freedom of Information Act, the Open Meetings Act, regulation of commercial advertising, and the tort of defamation. Many non-profit advocacy organizations (including the ACLU) engage in legislative advocacy on these same issues, but without an exemption from this $1,000 registration fee.

**2. The religion exemption**

26. Section 3(a)(7) of the amended Act would exempt: "Any full-time employee of a bona fide church or religious organization who represents that organization solely for the purpose of protecting the right of the members thereof to practice the religious doctrines of that church or religious organization, or any such bona fide church or religious organization." In other words, this exemption extends to persons who (a) work full-time for a religious organization, and (b) work exclusively to advance "the right of the members [of that religious organization] to practice . . . religious doctrines . . . ."

27. At a minimum, this religious fee waiver extends, for certain full-time employees of religious organizations, to certain legislative advocacy in support of the

free exercise of religion. This includes advocacy for a broad array of exemptions for religious practices from various laws of general applicability (*e.g.*, an exemption from the Illinois Human Rights Act for church employees who define and disseminate church doctrine). It also includes support for numerous kinds of laws that require various accommodations of religious practice (*e.g.*, a mandate that employers accommodate certain religious practices of their employees). Many other non-profit advocacy organizations (including the ACLU) engage in legislative advocacy on these same issues, sometimes in support of and sometimes in opposition to the proposed religious exemption or accommodation – but always without a waiver of this $1,000 registration fee.

**D.**      **Application of the Act to plaintiffs**

29.     For decades, the ACLU has dedicated substantial resources towards advocacy on matters of public concern before the Illinois General Assembly, the Illinois Governor, and various Illinois executive officials. For example, the ACLU and Ms. Dixon every year engage in legislative advocacy regarding scores of bills before the Illinois General Assembly on a broad range of issues, including but not limited to AIDS/HIV privacy, criminal justice, education, free speech, foster care, gender equality, LGBT rights, health care facilities, immigration, law enforcement, national security, prisons, racial justice, religious liberty, and reproductive freedom.

30.     In light of the amended Act's exemption from the fee for certain advocacy by for-profit and non-profit media organizations, it is pertinent that the ACLU and Ms. Dixon engage in legislative advocacy in support of freedom of the press. For example, the ACLU and Ms. Dixon dedicated substantial resources towards the passage of the following laws:

10

(a) The original passage of, and the recent amendments to, the Illinois Freedom of Information Act, 5 ILCS 120, which allows everyone to obtain records from state and local government. The press frequently uses FOIA as an information and news gathering tool, and the press regularly engages in legislative advocacy to protect and expand FOIA's provisions.

(b) The Illinois College Campus Press Act, 110 ILCS 13/1, which bars censorship of student journalists at public colleges and universities.

(c) The Illinois Citizen Participation Act, 735 ILCS 110, which protects everyone, including the press, from retaliatory litigation against speech that petitions the government for redress of grievances.

31. As to this media exemption, it is also pertinent that the ACLU:

(a) regularly publishes many times per year printed and electronic newsletters that provide updates and substantive discussions of current civil liberties issues, and distributes them to many thousands of people, including ACLU members, judges, elected officials, and other persons active in civil liberties, civil rights, and civic affairs;

(b) publishes topical educational materials (including "Know Your Rights" documents) that are broadly disseminated to the public;

(c) maintains and updates a website that includes substantial news and information about various subject areas related to civil liberties; and

(d) hundreds of times per year communicates with the general public regarding current developments concerning a broad host of civil liberties issues, by means of (i) national and local print and broadcast media, including through press

11

conferences, press releases, interviews, and editorials, and (ii) in-person public speaking events across the State of Illinois, including before business groups, houses of worship, and students of all ages.

32. In light of the amended Act's exemption from the fee for certain advocacy by religious organizations, it is pertinent that the ACLU and Ms. Dixon engage in legislative advocacy in support of the free exercise of religion. For example, the ACLU and Ms. Dixon dedicated substantial resources towards passage of the Illinois Religious Freedom Restoration Act, 775 ILCS 35/10, which requires strict judicial scrutiny of government actions that substantially burden free exercise. Moreover, the ACLU and Ms. Dixon frequently advocate for or against myriad proposed exemptions for religious practice and belief from laws of general applicability.

33. To carry out its legislative advocacy, the ACLU for more than 25 years has employed a legislative advocate, and from 2005 to the present has employed two legislative advocates.

34. In the future, the ACLU will continue to engage in substantial legislative and executive advocacy, including by means of employing registered lobbyists to do so.

35. The ACLU pays the fee required by the amended Act, both for itself and for its registered lobbyist employees. In the future, it will continue to do so.

36. In 2009, the ACLU paid $1,050 to register itself, Ms. Dixon, and the ACLU's second employee who is a registered lobbyist. In 2010, the amended Act would require the ACLU to pay $3,000 to register itself and these two persons.

37. Every dollar that the ACLU spends on the registration fee required by the amended Act is a dollar diverted from what the ACLU can pay for legislative and

executive advocacy and its other activities. For example, the fee diminishes the ACLU's capacity to print written legislative advocacy materials, and to upgrade technologies that help mobilize ACLU members to participate in the legislative process.

**E.      Necessity of and entitlement to injunctive relief**

38.     Plaintiffs and the two classes will continue in the future to engage in advocacy subject to the fee.

39.     Unless enjoined by this Court, the Secretary will enforce the fee required by the amended Act.

40.     Plaintiffs and the two classes will suffer irreparable harm as a result of the Secretary's fee required by the amended Act, and they have no adequate remedy at law.

## VI.   CLAIM FOR RELIEF

41.     The allegations of paragraphs 1 through __ are realleged and incorporated by reference as if fully set forth herein.

42.     On its face, and as applied to non-profit advocacy organizations and their registered lobbyist employees, the amended Act violates the First and Fourteenth Amendments to the U.S. Constitution by:

(a)     imposing an impermissible fee on speech and petitioning that exceeds the amount it actually costs or reasonably should cost the Secretary to administer the amended Act; and

(b)     exempting from that highly burdensome fee on speech and petitioning certain advocacy by religious and media organizations.

## VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the following relief:

13

A. Entry of a declaratory judgment holding that on its face, and as applied to non-profit advocacy organizations and their registered lobbyist employees, the fee required by the amended Act:

(1) violates the First Amendment, by taxing speech, by diverting $200 of every fee to the Illinois General Revenue Fund;

(2) violates the First Amendment, by taxing speech, by charging more to engage in legislative and executive advocacy than it actually and reasonably costs to administer the amended Act; and

(3) violates the First and Fourteenth Amendments, by exempting from the fee certain advocacy by religious and media organizations.

B. Entry of a temporary restraining order, and/or a preliminary injunction, that enjoins the Secretary from requiring non-profit advocacy organizations and their registered lobbyist employees to pay:

(1) a registration fee above $150, because $200 of the amended Act's fee is expressly diverted to the Illinois General Revenue Fund, and the remaining $650 of the amended Act's fee has not been proven by the Secretary to be his actual and reasonable costs of administering the Act; and

(2) any fee at all, because the media and religion exemptions comprise unlawful speaker-based discrimination.

C. Entry of a permanent injunction that enjoins the Secretary from requiring any non-profit advocacy organizations and their registered lobbyist employees to pay:

(1) the $200 portion of the amended Act's registration fee that is expressly diverted to the Illinois General Revenue Fund;

    (2) any part of the remainder of the fee – *i.e.*, the $800 portion deposited in the Lobbyist Registration Administration Fund – that exceeds the amount that the Secretary can prove is his actual and reasonable costs of administering the Act; and

    (3) any fee at all, because the media and religion exemptions comprise unlawful speaker-based discrimination.

  D. Award plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

  E. Award such other and further relief as this Court may deem just and proper.

  DATED: December 11, 2009

Respectfully submitted:


  s/ Adam Schwartz
Counsel for plaintiffs

| | |
|---|---|
| HARVEY GROSSMAN | EDWARD W. FELDMAN |
| ADAM SCHWARTZ | DIANE F. KLOTNIA |
| KAREN SHELEY | ROGER J. PERSTADT |
| JENNIFER SABA | Miller Shakman & Beem |
| Roger Baldwin Foundation of ACLU, Inc. | 180 N. LaSalle St., Suite 3600 |
| 180 N. Michigan Ave. Suite 2300 | Chicago, IL 60601 |
| Chicago, IL 60601 | (312) 263-3700 |
| (312) 201-9740 | |

## VERIFICATION

I declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the factual information included in the foregoing VERIFIED CIVIL RIGHTS COMPLAINT is true to the best of my knowledge, information, and belief.

*Colleen K. Connell*
Colleen K. Connell
Executive Director
American Civil Liberties Union of Illinois

Dated: December 11, 2009

## VERIFICATION

I declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the factual information included in the foregoing VERIFIED CIVIL RIGHTS COMPLAINT is true to the best of my knowledge, information, and belief.

*Mary E. Dixon*
Mary E. Dixon
Legislative Director
American Civil Liberties Union of Illinois

Dated: 12/11/09